IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

LOUIS WALTER HALL,

                                    Plaintiff,

        v.                                              Civil Action No. 3:07–CV–064

INTERNATIONAL PAPER COMPANY and
KOHLER COMPANY,

                                    Defendants,

and

HAGER CONTAINERS, LP, dba
DZIGNPAK,

                        Third Party Defendant.

<u>MEMORANDUM OPINION</u>

        This matter is before the Court on Motions for Summary Judgment (Docket Nos. 31

and 35) by International Paper Company and Kohler Company.  For the reasons stated

below, those Motions shall be DENIED with respect to Count I of Hall's Complaint and

GRANTED with respect to Counts II and III of Hall's Complaint.

1.      <u>Background</u>

        On January 14, 2004, Hall was employed by Ferguson Enterprises as a delivery

driver.  He joined the company in 2003, after serving in the Army Corps of Engineers and

working for the Virginia Department of Transportation for three decades.  On that day, Hall

delivered a box containing a whirlpool tub to a house in Fairfax, Virginia.  The box was

1

designed by Kohler and manufactured by International Paper.  Hall arrived at his destination and parked his truck, which was equipped with a liftgate, a platform that could be lowered mechanically.  Although Hall's duties did not include unloading products from his truck, he attempted to pull the box – which was secured to a wooden pallet – from the front of his truck to the liftgate by himself, using a strap attached to the box and an opening cut in the cardboard.  Hall successfully shifted the box several feet toward the liftgate.  But, as Hall pulled on the box, it suddenly ripped, Hall lost his balance, and he fell off the truck, landing on his head.  Hall suffered permanent brain damage, several broken bones, and other serious injuries.  On the date he was injured, Hall was fifty-one years old, and he can no longer work.

Hall sued in the Circuit Court of the City of Richmond, claiming that International Paper and Kohler (Count I) negligently designed and manufactured the box, and failed to warn him of the dangers that it posed; (Count II) breached their implied warranty of merchantability on the box; and (Count III) breached their implied warranty of fitness for a particular purpose.  Defendants validly removed the suit to this Court, pursuant to 28 U.S.C. §§ 1332 and 1441.  International Paper subsequently filed a Complaint against Hager Containers, L.P., which participated in the manufacture of the box, seeking indemnification and contribution if International Paper is found liable to Hall.

Hall alleges that the openings in the box are, or may reasonably be regarded as, handholds.  He contends that Kohler directs its employees to lift heavy boxes using openings that are the same size and shape as the openings in the box.  And, Hall alleges

2

that the box was not designed to hold a tub weighing 330 pounds, and that it was manufactured using a weaker grade of cardboard than Kohler specified in its contract with International Paper.  Thus, he claims, the box was negligently designed and/or manufactured because it was not strong enough to serve its foreseeable purpose. Defendants reply that the box was manufactured using an adequate grade of cardboard, and that the openings in the box are "access holes," intended only to help its employees assemble the box – not for moving it.  Thus, Defendants contend, Hall misused the box in an unforeseeable way by pulling it by its openings.

Hall also alleges that Defendants failed to warn him of the dangers posed by the box. A statement printed in small type on the box warned that using the openings in the box to move it "may result in damage to the carton and/or subsequent injury to user."  Hall alleges that Kohler prints that warning on all of its boxes that contain openings, including boxes that can be carried safely by their openings, vitiating the force of the statement.  He also alleges that the warning did not comply with industry standards for warning labels. However, Hall acknowledged that he did not read the warning, and he stated that he would have used the openings in the box to move it, even if he had read the warning, because he believed that they were handholds.  Defendants claim that the warning printed on the box was adequate, and deny that they had a duty to warn Hall of any dangers posed by the box because those dangers were obvious, a matter of common knowledge, and familiar to Hall and his employer.

In addition, Defendants argue that Hall should not have attempted to unload the box without help, or that he should have pushed the box to the liftgate or used equipment to help him (e.g., a pallet jack). Thus, Defendants claim, Hall was contributorily negligently and assumed the risk of injury from moving the box. Hall acknowledged that he made "an error in judgment" by trying to unload the box, but argues that he did not act negligently.

Finally, International Paper argues that it is not liable for Hall's injuries because it manufactured the box in accordance with specifications provided by Kohler.

2.    Standard of review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if, given the evidence, a jury could reasonably return a verdict for the non-moving party; a fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See Guinness PLC v. Ward, 955 F.2d 875, 883 (4th Cir. 1992) (stating that a dispute is "genuine" if the evidence "create[s] fair doubt"). In deciding whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the non-moving party, but it may not weigh the evidence or evaluate its credibility. Anderson, 477 U.S. at 249, 255.

The party moving for summary judgment must identify the evidence that it believes demonstrates that no genuine issues of material fact exist. Celotex Corp. v. Catrett, 477

4

U.S. 317, 323 (1986).  If the moving party carries that burden, the non-moving party must establish "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The non-moving party may not do so by relying solely on its pleadings.  Celotex, 477 U.S. at 324.

3.     Analysis

    A.     Negligence

        1.     Negligent design and manufacture

Under Virginia law, a manufacturer is not required to provide an "accident-proof" product.  Jeld-Wen, Inc. v. Gamble, 501 S.E.2d 393, 396 (Va. 1998).  A product must be "fit for the ordinary purposes for which it is to be used," and its manufacturer is liable for an injury resulting from a foreseeable misuse of the product.  Slone v. Gen. Motors Corp., 457 S.E.2d 51, 54 (Va. 1995) (ruling that it was not unforeseeable as a matter of law that a dump truck would roll over, reversing a grant of summary judgment in favor of the defendant).  But, a manufacturer is not liable for an injury resulting from an unforeseeable misuse of its product – even an unforeseeable misuse that poses an "obvious" danger. Jeld-Wen, 501 S.E.2d at 396–97.  In other words, the issue is whether the misuse was foreseeable, not whether the injury was foreseeable, given the misuse.

Ignoring a manufacturer's instructions about how to use a product does not constitute unforeseeable misuse as a matter of law.  See, e.g., Lust v. Clark Equip. Co., 792 F.2d 436, 439 (4th Cir. 1986) (applying Virginia law, ruling that it was foreseeable that the

user of a front end loader would attempt to repair the machine while it was running, reversing a judgment in favor of the manufacturer).  It is foreseeable that a product may be used even if it does not function properly.  White Consol. Indus., Inc. v. Swiney, 376 S.E.2d 283, 286 (Va. 1989) (ruling that the use of a stove whose temperature controls were broken was a foreseeable misuse).  And, the endorsement of a use of a product by its manufacturer (e.g., in literature describing the product) indicates that the use was foreseeable.  Morgen Indus. v. Vaughan, 471 S.E.2d 489, 492 (Va. 1996).

To recover for an injury resulting from a foreseeable use of a product, a party must show that (1) the product was "unreasonably dangerous" for that use and (2) the danger existed when the product left the manufacturer's control.  Jeld-Wen, 501 S.E.2d at 396.  A product may be unreasonably dangerous if "it is defective in assembly or manufacture, unreasonably dangerous in design, or unaccompanied by adequate warnings concerning its hazardous properties."  Morgen Indus., 471 S.E.2d at 492.  The Fourth Circuit has suggested that a product may be unreasonably dangerous even if its defects are obvious. Austin v. Clark Equip. Co., 48 F.3d 833, 837 (1995).  But see Harris-Teeter, Inc. v. Burroughs, 399 S.E.2d 801, 802 (Va. 1991) (ruling that a party cannot recover for an injury caused by a visible defect).  However, a manufacturer is not liable for a defect in the design of a product that it manufactures according to a buyer's specifications, unless those specifications are obviously dangerous and should not be followed.  Austin, 48 F.3d at 837.

In general, whether a use of a product is foreseeable and whether a product is unreasonably dangerous are questions of fact.  Morgen Indus., 471 S.E.2d at 492.  In

addition, whether a person was contributorily negligent is generally a question to be decided by a jury.  See Kelly v. Va. Elec. & Power Co., 381 S.E.2d 219, 222 (Va. 1989).  In this case, the parties disagree sharply about several key factual issues, including whether Hall misused the box in an unforeseeable way by pulling on its openings, attempting to move it without any assistance, and whether the box was strong enough to hold the tub.

Hall has established that the openings in the box were similar – in size, shape, and location – to standard handholds, and that Kohler has referred to the openings as "hand holes."  Hall has also offered evidence that materials provided by Kohler to its employees recommend lifting heavy boxes by "handles" that resemble the openings in the box that he used.  Thus, Defendants are not entitled to summary judgment on the ground that Hall misused the box in an unforeseeable way.

Hall has shown that the box was manufactured using a different grade of cardboard than Kohler's specifications required, and that the bathtub weighed more than the box was designed to carry.  In addition, Hall has established that the warning printed on the box was not consistent with an industry-standard warning label.  Those facts would allow a jury to conclude reasonably that the box was unreasonably dangerous,[1] which precludes granting summary judgment on International Paper's defense that it manufactured the box in accordance with specifications provided by Kohler, as well as Hall's allegation of negligence.

---

[1] In Fenton v. Sterling Plumbing Group, 21 F.3d 1113 (9th Cir. 1994) (unpublished) (applying Ala. law), a suit brought by a person who fell from a truck after a box that he was unloading ripped, the court affirmed findings that the box was unreasonably dangerous, noting that the defendant was aware that cardboard boxes can tear.  The parent company of the defendant in that suit was Kohler.  Id.

7

2.      Failure to warn

If a manufacturer (1) knows, or should know, that its product is likely to be dangerous for its intended use; (2) does not have any reason to believe that intended users of the product will recognize that danger; and (3) fails to use reasonable care to warn those people of that danger, the manufacturer is liable for failure to warn. Slone, 457 S.E.2d at 54. But, no duty to warn exists if the person using the product should have been aware of the danger. Spangler v. Kranco, Inc., 481 F.2d 373, 375 (4th Cir. 1973) (applying Virginia law). See also Butler v. Navistar Int'l Transp. Corp., 809 F. Supp. 1202, 1207 (W.D. Va. 1991) (applying Virginia law, implying that no duty to warn exists with regard to matters of common knowledge); Buettner v. R.W. Martin & Sons, Inc., 47 F.3d 116, 120 (4th Cir. 1995) (applying Virginia law, ruling that the seller of a product is not obligated to warn an employee of the buyer of a danger posed by the product, if the seller reasonably believes that the employee is "well aware" of the danger or has been warned of the danger by his employer); Featherall v. Firestone Tire & Rubber Co., 252 S.E.2d 358, 366 (Va. 1995) (suggesting that a duty to warn exists only if a manufacturer has superior knowledge of the danger posed by its product).

Whether a danger is obvious is usually a question for a jury. O'Brien v. Everfast, Inc., 491 S.E.2d 712, 715 (Va. 1997). For example, whether a person "was aware of, but did not use, procedures [that] would have improved [a] product's safety" was submitted to a jury. Morgen Indus., 471 S.E.2d at 493. But see Austin, 48 F.3d at 836 (ruling that a jury could reasonably find only that a company was not liable for an injury resulting from a

8

collision between two forklifts, given evidence that the forklifts were equipped with horns and flashing lights, the injured employee received training that indicated the dangers associated with driving a forklift, and the forklift that caused the injury was driven in a way that violated the company's safety policy).

Hall has established facts that would allow a jury to find reasonably that the box was dangerous, and that the danger was not obvious, as discussed above.  It is a close question whether Hall's admission that he would have pulled the box by its openings, even if he had read the warning printed on the box, means that any breach of a duty to warn by Defendants did not proximately cause Hall's injuries.  However, given the unresolved questions of fact that bear on this issue – questions that are generally decided by a jury – the Court declines to grant summary judgment on Hall's claim of failure to warn.

Since Hall has established facts showing the existence of genuine issues about whether Defendants were negligent and Hall was contributorily negligent, summary judgment on Count I of Hall's Complaint is not appropriate.

      B.      Breach of implied warranty of merchantability

Except in circumstances that do not apply in this case, in a contract for the sale of goods "a warranty that the goods shall be merchantable shall be implied."  Va. Code § 8.2–314.  The warranty protects any "person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods."  Id. § 8.2–318.  While the warranty does not protect only the buyer of a product, see Martin v. Am. Med. Sys., Inc., 116 F.3d 102, 105 (4th Cir. 1997) (ruling that an express warranty protected the

recipient of a prosthetic device); Whittle v. Timesavers, Inc., 614 F. Supp. 115, 117–18

(W.D. Va. 1985) (extending an implied warranty of merchantability to the buyer of a used

wood sander), no court applying Virginia law has decided whether a person delivering a

box is protected by an implied warranty of merchantability on the box.  Other courts have

resolved this question in different ways.  Compare Lukwinski v. Stone Container Corp., 726

N.E.2d 665 (Ill. App. Ct. 2000) (ruling that an implied warranty of merchantability on a box

did not protect a driver unloading the box, since the seller of the box and the driver

contracted for the provision of services, not goods), with Calabria v. St. Regis Corp., 508

N.Y.S.2d 186 (N.Y. App. Div. 1986) (ruling that the statute of limitations governing actions

brought under section 2-318 of the Uniform Commercial Code applied to a suit by a

delivery person who suffered injuries after a box that he was unloading ripped).

Concluding that the warranties on the box can be enforced without including Hall in the

class of people covered, see Reed v. City of Chicago, 263 F. Supp. 2d 1123, 1126 (N.D. Ill.

2003), the Court declines to rule that an implied warranty of merchantability protects a

person who contracts with the seller or buyer of goods to provide a service.  Thus, the Court

shall grant summary judgment on this count to both defendants.

     C.     Breach of implied warranty of fitness for a particular purpose

     A buyer of goods may recover for a breach of an implied warranty of fitness for a

particular purpose only if the seller of the goods had reason to know, at the time the parties

contracted, that the buyer was relying on the seller's skill to provide goods suitable for a

particular purpose.  Bayliner Marine Corp. v. Crow, 509 S.E.2d 499, 503 (Va. 1999)

(applying Va. Code § 8.2–315).  Hall did not buy the box, <u>see</u> Va. Code § 8.2–103

(defining "buyer" as "a person who buys or contracts to buy goods"), and Hall does not

allege that he relied on the skill of International Paper or Kohler to provide a box suitable

for a particular purpose. Moreover, at oral argument counsel for Hall conceded that this

claim lacked merit.  Accordingly, the Court shall grant summary judgment on this count to

both defendants.

4.      <u>Conclusion</u>

Accordingly, Defendants' Motions for Summary Judgment shall be DENIED with

respect to Count I of Hall's Complaint GRANTED with respect to Counts II and III of Hall's

Complaint.  It is SO ORDERED.

<div style="border:1px solid black; padding:10px;">

_____/s/_____

James R. Spencer
Chief United States District Judge

</div>

ENTERED this __9th__ day of October 2007